[No. 39551.    Department Two.    March 7, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. LYNN
MICHAEL PETERSON, *Appellant.*\*

*Murray B. Guterson*, for appellant.

*Charles O. Carroll* and *David H. Beitz*, for respondent.

HILL, J.—This is an appeal from a conviction of assault in the second degree.

The only issue in this case is whether instruction No. 7[1] should have been given.

Just enough of the factual content will be given to make clear the basis of appellant's argument.

Both the appellant and the man he shot (Roland Barry) were guests at a party. Between 4 and 4:30 a.m. (August 26, 1966), there was an altercation between Barry and the appellant. In the presence of the six or seven other persons

*Reported in 438 P.2d 183.

---

[1] "Under the law, every sane man is presumed to intend the natural and ordinary results of his voluntary act.

"Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant did inflict grievous bodily harm upon the alleged victim in this case, then you may presume that he inflicted such harm intentionally." (Instruction No. 7)

still remaining at the party, Barry "said some pretty humiliating things" to the appellant and "slapped" him at least twice.

The appellant, a recently resigned police officer, went out to his car and came back with his revolver in his hands; pointing it at Barry, the appellant, in turn, gave Barry a "dressing down" (to quote a witness). Appellant had apparently started to lower his revolver—and at least two witnesses voiced the idea that they thought "it [the trouble] was all over"—when a shot was fired, hitting Barry in the shoulder. The appellant immediately broke into tears and surrendered the gun. His contention was, and is, that the shooting was an accident; that someone must have hit his arm; that there was no intent to injure Barry.

The state presented a double-barreled theory, *i.e.*, that second-degree assault was committed when the appellant pointed the revolver at Barry; also when he fired it, inflicting grievous bodily harm. The jury was so advised in instruction No. 6[2] and instruction No. 9.[3] When we are discuss-

---

[2]"For the purposes of this action, Assault in the Second Degree may be committed in either one of two ways, which are further defined as follows:

"(1) By assaulting another person and willfully inflicting grievous bodily harm upon him, either with or without a weapon.

'Grievous bodily harm' is any physical injury of a serious or aggravated nature; it includes any hurt or injury calculated to interfere with health or comfort of the person injured and need not necessarily be an injury of a permanent nature.

"(2) By willfully assaulting another person with a weapon or other instrument or thing likely to produce bodily harm.

"An assault is an attempt, real or apparent, with unlawful force to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt. Willfully pointing a loaded gun at another who is within range is an assault." (Instruction No. 6)

[3]"To convict the defendant Lynn Michael Peterson, of the crime of ASSAULT IN THE SECOND DEGREE, as charged in the Information herein, the State must prove to you beyond a reasonable doubt:

"(1) That on or about the 26th day of August, 1966, the defendant did unlawfully assault one Rolland J. Barry, a living human being;

"(2) That in the commission of said assault the defendant either

"(a) employed a weapon or other instrument likely to produce bodily harm,

ing these theories separately, we will refer to them as the "gun pointing" theory, or the "inflicting grievous bodily harm" theory.

The appellant's contention is that it was undisputed that he pointed the revolver at Barry and that it went off and grievous bodily harm was inflicted on Barry—consequently there was only one defense to the charge of inflicting grievous bodily harm with a weapon, *i.e.*, that he never intended to injure Barry. Appellant argues that instruction No. 7 deprived him of that defense by telling the jury that if it found he inflicted the injury "then you may presume that he inflicted such harm intentionally."

█ The state seeks to minimize the effect of the appellant's argument by pointing out that appellant's whole contention would have been met by the insertion of the word "voluntarily" before the words "inflict grievous bodily harm upon the alleged victim." That is quite true, but the point is that "voluntarily" was not inserted, and we see no escape from the logic of the appellant's argument that once the jury found the totally undisputed "did inflict grievous bodily harm" element, instruction No. 7 then authorized the finding that such harm was inflicted intentionally. Within the context of this case,[4] such an instruction made a

---

"Or

"(b) did inflict grievous bodily harm upon the person of the said Rolland J. Barry; and

"(3) That said assault occurred in King County, Washington.

"If you find from the evidence admitted in this case that the state has proved beyond a reasonable doubt elements (1), (3), and either (2)(a) or (2)(b), then it will be your duty to return a verdict of Guilty of the crime of Assault in the Second Degree as charged in the Information herein. Subheadings (a) and (b) of element (2) are alternatives and only one need be proven.

"On the other hand, if you find that the evidence fails to establish beyond a reasonable doubt either one of the foregoing elements, then it will be your duty to return a verdict of not guilty." (Instruction No. 9)

[4]The general verdict of guilty of second-degree assault, even coupled with a special finding that appellant was, at the time, armed with a deadly weapon, offers no adequate clue to the basis for the jury's verdict. While the jury may have found the appellant guilty on both the "gun pointing" and the "inflicting grievous bodily harm" theories, or either, there remains the possibility that it was only on the latter. Ambiguities must be resolved against the state.

guilty verdict mandatory on the "inflicting grievous bodily harm" theory. This constituted error requiring that the conviction be set aside and a new trial granted.

It is only fair to the able trial judge (and the prosecuting attorney) to point out that this defect in the instruction was not called to their attention at the trial. Trial counsel for the appellant (not the counsel on this appeal) did object to instruction No. 7, but solely on the ground that it hampered his argument on justification. (The trial court did instruct on justification, and no exception was taken to that instruction.) Trial counsel insisted that "justification" was the "gist of this case." Appellate counsel now urges that the "only real issue was whether that harm was inflicted intentionally."

█ Ordinarily, the trial court's attention not having been directed to this error in the instruction at a time when it could have been corrected, we would not consider it on appeal. *State v. Dennison*, 72 Wn.2d 842, 435 P.2d 526 (1967); *State v. Johnson*, 69 Wn.2d 264, 418 P.2d 238 (1966); *State v. Noyes*, 69 Wn.2d 441, 418 P.2d 471 (1966); *State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966); *State v. Miller*, 66 Wn.2d 535, 403 P.2d 884 (1965).

However, where an instruction invades a constitutional right of the accused (such as the right to a jury trial),[5] it is not necessary, in order to have such error reviewed, that an exception be taken and called to the attention of the trial court. *State v. Louie, supra; State v. Suleski*, 67 Wn.2d 45, 406 P.2d 613 (1965); *State v. Case*, 49 Wn.2d 66, 298 P.2d 500 (1956); *State v. Reeder*, 46 Wn.2d 888, 285 P.2d 884 (1955); *State v. Marsh*, 126 Wash. 142, 217 Pac. 705 (1923); *State v. Warwick*, 105 Wash. 634, 637, 178 Pac. 977 (1919).

The conviction is set aside and the case remanded for a new trial under proper instructions.

FINLEY, C. J., HUNTER and NEILL, JJ., and EVANS, J. Pro Tem., concur.

---

[5]To direct a verdict, as instruction No. 7 does, is to deny the constitutional right to a trial by jury. *State v. Thompson*, 68 Wn.2d 536, 413 P.2d 951 (1966); *State v. Ring*, 52 Wn.2d 423, 325 P.2d 730 (1958); *State v. Gellerman*, 42 Wn.2d 742, 259 P.2d 371 (1953); *State v. Christiansen*, 161 Wash. 530, 297 Pac. 151 (1931).